# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JORDAN R. WILLIAMS,

          Plaintiff,

v.

MILWAUKEE COUNTY, RICHARD R. SCHMIDT, EVANSTON INSURANCE COMPANY, WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION, ARMOR CORRECTIONAL HEALTH SERVICES INC., JOHN DOES 1 – 20, BEAZLEY USA SERVICES INC., SCOTTSDALE INSURANCE COMPANY, KAREN RONQUILLO-HORTON, MAUREEN WHITE, GINA STREHLOW, WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, NANCY EVANS, and KEVIN NYKLEWICZ,

          Defendants.

Case No. 18-CV-1045-JPS

**ORDER**

1.     **INTRODUCTION**

Plaintiff alleges that while incarcerated at the Milwaukee County Jail (the "Jail") in 2015, Defendants failed to appropriately treat his ulcerative colitis ("UC"), causing him severe and ongoing medical problems. (Docket #24 at 9–15). Plaintiff asserts three claims in this action. First, he contends that Defendants violated his constitutional right as an incarcerated person to minimally adequate healthcare. *Id.* at 15–16. Second, Plaintiff alleges that his mistreatment was a result of insufficient or harmful policies and

procedures established by Defendants Milwaukee County (the "County") and Armor Correctional Health Services, Inc. ("Armor"). *Id.* at 16–22. Finally, Plaintiff believes that Armor was negligent in its attempts to afford him medical care. *Id.* at 22–23.

Armor moved to dismiss various aspects of Plaintiff's original complaint. (Docket #8). Plaintiff responded by submitting an amended complaint. (Docket #24). Armor thereafter renewed its motion to dismiss, and other defendants filed their own such motions. (Docket #33 and #40). The motions to dismiss are now fully briefed, and for the reasons stated below, they will be granted. Plaintiff will, however, be given a final opportunity to amend his pleading.

2. **STANDARD OF REVIEW**

Defendants have moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). This Rule provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [his] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted).

To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted). Ultimately, dismissal is only appropriate "if it appears beyond

doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (quotation omitted).

3. **RELEVANT ALLEGATIONS**

    3.1    **Timeline of Events**

Defendant Richard R. Schmidt ("Schmidt") was the County sheriff, who bears overarching responsibility for operating the Jail. (Docket #24 at 7). Defendants Nancy L. Evans ("Evans") and Kevin Nyklewicz ("Nyklewicz") are high-ranking members of the Sheriff's Office who directly manage the Jail's daily activities (together with the County, these officials hereinafter referred to as the "County Defendants"). *Id.* at 7–8. The County has contracted with Armor to provide medical care to Jail inmates. *Id.* at 2–3. Defendants Karen Ronquillo-Horton ("Horton"), Maureen White ("White"), and Gina Strehlow ("Strehlow") are part of Armor's staff at the Jail. *Id.* at 3–4. Horton is the medical director, White is the mental health director, and Strehlow is the director of nursing. *Id.*

In June 2015, Plaintiff was being in held in the Jail. *Id.* at 9. In late June and early July, medical and security staff noticed that Plaintiff was suffering from diarrhea, had developed boils, and was otherwise experiencing medical distress. *Id.* at 10. Plaintiff was diagnosed with UC on July 10. *Id.* This is a serious condition that can become debilitating without treatment. *Id.*

Plaintiff experienced many and obvious symptoms of untreated UC. He developed painful mouth sores, experienced severe stomach pain, anemia, bloody stools, and severe diarrhea. *Id.* at 10–12. Plaintiff had difficulty eating, and what he did eat passed very quickly. *Id.* at 12. He lost more than fifty pounds between late June and mid-August and was

experiencing as many as twenty bowel movements per day. *Id.* at 12–14. Plaintiff had a number of court appearances in mid-August that he attended wearing adult diapers and, being too weak to walk, had to be transported in a wheelchair. *Id.* All of this caused Plaintiff substantial emotional distress as well as physical pain. *Id.* at 15.

In mid-August, Plaintiff was admitted to Froedtert Hospital ("Froedtert"). He was diagnosed with "ulcerative colitis with complication, anemia, malnutrition and refractory diarrhea." *Id.* at 13. Damningly, Froedtert's doctors "specifically discussed the natural history of poorly treated [ulcerative colitis] [which] could include complications that could need colectomy." *Id.* In early September, after giving Plaintiff a few weeks to regain some strength, Froedtert doctors performed a total colectomy to treat Plaintiff's "toxic colitis." *Id.* Plaintiff now lives with a colostomy bag and will likely need additional surgeries in the future. *Id.* at 14.

### 3.2    Plaintiff's Claims

Plaintiff's presentation of the timeline of events is relatively straightforward. The remainder of the amended complaint is anything but. It is poorly organized and substantial sections are both conclusory and repetitive. The Court nevertheless gives its best interpretation of his remaining allegations. Plaintiff presents three claims for relief. The first states that all Defendants violated his right to appropriate medical care as required by the Fourth and Fourteenth Amendments. *Id.* at 15–16. Plaintiff specifically names Horton, White, and Strehlow in this claim for their failure to utilize their medical expertise to treat him. *Id.* at 16. Plaintiff's second cause of action is leveled at the County and Armor for their policies which allegedly contributed to his mistreatment. *Id.* at 16–22. This is colloquially referred to as a *Monell* claim, named for the Supreme Court case

which held that corporate entities can be liable for constitutional violation directly caused by an official policy of the entity or by an act of the entity's leadership. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Plaintiff's final claim is against Armor for its negligent provision of medical care, based on the same conduct underlying the constitutional claim. (Docket #24 at 22–23). The Court will now further outline the allegations with respect to the first two claims.

### 3.2.1 First Claim – Constitutional Violation

Confusingly, Plaintiff alleges this claim against "each Defendant," even though most of the Defendants are not mentioned in the timeline of events. Further, some of the Defendants are corporate entities which can bear constitutional liability only through their policies, not by the direct action of their employees. Finally, some of the Defendants are insurance companies having nothing to do with the underlying facts of this action at all.

Horton, White, and Strehlow are the only Defendants mentioned by name in Plaintiff's first claim. *Id.* at 16. He alleges that they, as well as many other Armor personnel, were aware of Plaintiff's ailments and deteriorating condition, but did little or nothing to treat it. *Id.* at 10–16. Plaintiff suggests that Horton in particular felt Plaintiff was complaining too much, and so told her subordinates to ignore him. *Id.* at 11. Despite his symptoms, Plaintiff was repeatedly "cleared" during medical examinations at the Jail. *Id.* Other internal communications between Armor employees showed an appreciation of the seriousness of Plaintiff's condition. *Id.* at 12–13.

### 3.2.2 Second Claim – *Monell* Liability

Plaintiff maintains that the County and Armor bear direct liability for his maltreatment through their policies, or the lack thereof, or by the

conduct of their high-ranking personnel who supervised Jail operations. Despite the fact that such claims are subject to exacting pleading and proof standards, *see infra* pg. 9–10, Plaintiff's policy allegations are scattershot and disorganized. Again, though, the Court must press on.

First, Plaintiff claims that both Evans and Nyklewicz, presumably targeted because of their roles as high-ranking County representatives, were aware of his special needs and did nothing to help. *Id.* at 17. This was exacerbated by their complete lack of training related to jail administration, though they were entrusted with precisely that task. *Id.* Second, Horton, White, and Strehlow, as Armor representatives, were similarly aware of Plaintiff's deteriorating condition, and that it was being caused by untreated UC, but did nothing. *Id.*

Third, Plaintiff contends that certain of the County and Armor's policies contributed to cause his damages. *Id.* at 18. Plaintiff believes that the County and Armor's policy concerning care for gastrointestinal ailments caused unreasonable delays in his care and also failed to adequately address such conditions when treatment was provided. *Id.* He also questions the entities' recordkeeping policies, which are allegedly haphazard, incomplete, and uncoordinated. *Id.* at 18–19. More generally, Plaintiff maintains that the County and Armor engendered in Jail staff a culture of indifference to inmate medical needs, to the point of ignoring those needs outright. *Id.* at 19–21. Previously, a consent decree had been entered to address the poor state of medical care at the Jail. *Id.* at 20. Plaintiff claims that the County and Armor failed to meaningfully comply with the decree. *Id.* The tacit approval of substandard medical care was reinforced by the entities' failure to hold staff accountable for medical mistreatment. *Id.* at 20–21.

4. **ANALYSIS**

The County Defendants ask that the Court dismiss Schmidt, Evans, and Nyklewicz on the claims for their alleged individual liability, as well as the *Monell* claim against the County itself. (Docket #33). Armor seeks dismissal of the direct liability claim (viewed by Armor as a vicarious liability claim) and the *Monell* claims. (Docket #40). With those dismissed, the Armor Defendants request that the Court relinquish jurisdiction over the medical negligence claim. (Docket #41 at 21).

As discussed above, Plaintiff's amended complaint is larded with generalizations and fails to carefully lay out the basis for his claims against each defendant in an organized fashion.[1] His response to Defendants' motions is no different. His brief is short, conclusory, and fails to mention or meaningfully defend the majority of his claims. Further, in an attempt to oppose Defendants' motions, Plaintiff stretches the allegations of the amended complaint beyond their breaking point.[2] Finally, like the amended

---

[1] It is also sloppily drafted. The amended complaint mentions the name Fiebrink. (Docket #24 at 7–8). This is a reference to Kristina Fiebrink, whose estate is represented by the same counsel in a different case being pursued against the County and Armor. *The Estate of Kristina Ann Fiebrink et al. v. Armor Correctional Health Services, Inc. et al.*, No. 18-CV-832-JPS (E.D. Wis.). It is clearly a typographical error, likely caused by copying and pasting allegations from documents prepared for the Fiebrink case.

[2] For example, Plaintiff cites to paragraph 69 of the amended complaint as a crucial basis for his claims against the individual defendants, the County, and Armor. (Docket #46 at 8, 12). But this is the full text of that paragraph:

> Linda Williams, Mollian Williams, and Lalinda Williams, in addition to several employees of Milwaukee County and Armor complained to Dr. Horton, Dr. White and Strehlow about Williams' precipitous decline. Dr. Horton, Dr. White and Strehlow devised a policy on treatment of gastrointestinal conditions that downplayed the seriousness of the conditions. Dr. Horton, Dr. White and Strehlow caused Williams to be repeatedly cleared. As noted by

complaint, the brief is a hodgepodge of assertions joined together with little structure or explanation. Furthermore, Defendants' arguments for dismissal are well-taken. The Court will briefly address them with respect to each of claims one and two.

### 4.1 First Claim – Constitutional Violation

The individual County Defendants maintain that Plaintiff has not pleaded factual material to support the imposition of supervisory liability. Section 1983 liability cannot be vicarious. *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009). Rather, "[l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Id.* at 594. None of Schmidt, Evans, or Nyklewicz directly participated in Plaintiff's care (or lack thereof). Thus, Plaintiff's implication that they are liable simply because they are generally responsible for Jail operations holds no weight.

Alternatively, Plaintiff suggests that they are liable for lax enforcement of medical care policies and for turning a blind eye to Plaintiff's mistreatment. *See Daniel v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). But his allegations do not support such theories. Indeed, the individual County Defendants are barely mentioned in the substantive allegations of the

---

Camarata in an August 4, 2018 email, Williams "does not meet the criteria for" the emergency care he actually needed.

(Docket #24 at 17). The allegation is directed only at Horton, White, and Strehlow. Plaintiff particularly relies on the last sentence of the paragraph to show that all Defendants had notice of Plaintiff's lack of care and that Defendants' policies failed to afford Plaintiff appropriate healthcare. In doing so, he makes the sentence bear far more weight than it can hold. The sentence alleges only what a Jail nurse stated in an e-mail, not the knowledge, opinion, or policy of any of the named Defendants.

amended complaint. Plaintiff alleges only that Evans and Nyklewicz "were aware of [his] special needs and took no action to safeguard his civil and constitutional rights." (Docket #24 at 17). This vague allegation is insufficient to allow an inference that the individual County Defendants, including Schmidt, had direct knowledge of Plaintiff's mistreatment and chose to do nothing about it.

### 4.2 Second Claim – *Monell* Liability

The County points out numerous shortcomings with the *Monell* claim. A brief primer on *Monell* will aid this discussion. *Monell* allows governmental entities to be held liable under Section 1983, but not on a theory of respondeat superior. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). Instead, "[m]isbehaving employees are responsible for their own conduct," and "'units of local government are responsible only for their policies, rather than misconduct by their workers.'" *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)). For municipal liability to attach, a constitutional violation must be brought about by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with "final policymaking authority." *Darchak v City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009).

It is not clear which theor(ies) Plaintiff pursues, even upon reading his response brief. Nevertheless, the Court gleans that Plaintiff's focus is on the second, "custom" variation. To establish municipal liability under a "custom" theory, Plaintiff must plead facts allowing the reasonable inference that the County and Armor were deliberately indifferent to their subordinates' widespread practice of ignoring the serious medical needs of Jail inmates. *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003). Only if

Defendants consciously ignored a need for action can it be said that they adopted a *de facto* policy of violating inmates' constitutional rights. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.").

In addition to showing sufficient culpability on the part of the governmental entity, a *Monell* plaintiff must allege facts allowing the inference that the challenged policy, practice, or custom was the "moving force" behind his injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Simple but-for causation is not enough. *See Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014). Instead, the challenged practice "must be closely related to the ultimate injury" that the plaintiff suffered. *Harris*, 489 U.S. at 391; *Estate of Sims ex rel. Sims v. Cty. of Barbeau*, 506 F.3d 509, 515 (7th Cir. 2009) (there must be a "direct causal link" between a custom and the alleged constitutional violations).

Returning to the County's arguments, it first asserts that only a few of Plaintiff's multitude of policy allegations seem to be attributable to the County. For instance, the policy for gastrointestinal treatment appears, according to Plaintiff's allegations, to have been crafted by Armor alone. Plaintiff nevertheless suggests that the County, through Schmidt, is liable for failing to watch Armor's activities closely enough. *See King v. Kramer*, 680 F.3d 1013, 1020–21 (7th Cir. 2012). Not unexpectedly, such allegations are absent from the amended complaint (or, at least, not described with any clarity). Even if they were, the County's liability could not simply be derivative; the County would have to be deliberately indifferent to its policies regarding oversight of Armor.

In the same vein, the County argues that it lacked notice of any widespread practices leading to constitutional violations. Plaintiff must establish that the County, in the face of evidence that it was employing policies leading to constitutional violations, chose not to alter the policies. The amended complaint, however, only discusses Plaintiff's plight, without any reference to *prior* notice of issues with the policies he claims are deficient. Plaintiff does mention allegedly similar incidents of poor medical care at the Jail in his response brief. (Docket #46 at 10–11). These do not help for two reasons. First, the allegations are not found in the amended complaint. Second, and more importantly, they all occurred *after* Plaintiff's mistreatment, and it is thus temporally impossible for those incidents to provide notice of an unconstitutional policy as applied to Plaintiff's case.

Armor has similar concerns about Plaintiff's *Monell* theories. First, it asserts that Plaintiff's claims are so multifarious and generalized that it appears to be a complaint that all of Armor's medical care at the Jail is inadequate. This is not the proper use of a *Monell* claim, which should be aimed at discrete, definable practices which directly caused Plaintiff's injury. Second, Armor believes that Plaintiff's theories are not sufficiently tailored to the facts of his case. In other words, a custom-based *Monell* claim only works when the policy at issue, and the events of the plaintiff's case, form "some logically related incidents or series of acts which the governmental entity should have noticed as a unified whole." *Terry v. Cty. of Milwaukee*, Case No. 17-CV-1112-JPS, 2018 WL 2567721, at *8 (E.D. Wis. June 4, 2018). Again, Plaintiff fails to allege any medical care incidents that predate his mistreatment, much less incidents which are sufficiently similar to put Armor on notice of a problem with its policies. Finally, Armor contends that Plaintiff has not properly alleged a direct causal connection

between his injury and the many policies he claims are deficient. While causation is generally a question for a jury, Plaintiff's allegations must still allow a reasonable inference connecting a particular policy to his mistreatment.

### 4.3 Leave to Amend

In sum, the Court observes that Plaintiff's amended complaint is the product of poor drafting, organization, and legal analysis. While he need not plead legal theories, the amended complaint fails to clearly establish a plausible factual basis for his claims in light of the precedent defining those claims. Nevertheless, the Court detects a kernel of actionable factual allegations in Plaintiff's pleading. The Seventh Circuit strongly favors allowing amendment of pleadings if doing so would be less than futile. *Enger*, 812 F.3d at 568; *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). The Court will, therefore, give Plaintiff leave to amend his complaint for a second, and final, time.

In doing so, he should correct all of the deficiencies discussed above, as well as the others identified in Defendants' motions. Plaintiff should further tailor his allegations based on the information he has received in discovery in this matter to-date. The Court expects that this may result in the exclusion of a number of claims against a number of defendants. Plaintiff should only succinctly assert those claims that he has an appropriate basis to allege, and only against those defendants who are appropriate targets of such claims. In the end, the second amended complaint should excise extraneous claims, defendants, and conclusory allegations, be better organized, and provide much greater detail on the

issues that remain.³ To the extent Defendants have concerns about the second amended complaint, it would be most efficient for them to raise both legal and factual challenges to Plaintiff's claims in summary judgment motions.⁴

5.  **CONCLUSION**

Defendants' motions to dismiss will be granted, but Plaintiff will be given leave to amend his complaint one last time. With all of the foregoing instruction, Plaintiff is well-equipped to produce a clear, cogent, and detailed pleading which alleges only the claims which have a proper factual and legal basis, and most importantly, only those which he actually intends to present to the jury at trial. The Court expects no less.

Accordingly,

**IT IS ORDERED** that the motion to dismiss of Defendants Milwaukee County, Richard R. Schmidt, Wisconsin County Mutual Insurance Corporation, Nancy Evans, and Kevin Nyklewicz (Docket #33) be and the same is hereby **GRANTED**;

---

³Plaintiff should also omit the various legal theories he waived in the course of the briefing on Defendants' motions. As for his first claim, Plaintiff admits he does not actually intend to assert liability against Armor. (Docket #46 at 6 n.1). Presumably, the same is true of the County and the other corporate defendants. As for his second claim, he has abandoned his *Monell* theories regarding policies for record keeping, staffing, the consent decree, and more. *See* (Docket #53 at 3; Docket #55 at 4 n.3). Why these concessions came about only after two motions to dismiss and a prior amendment is beyond the Court's understanding.

⁴Strehlow and White filed their own motion to dismiss on December 21, 2018. (Docket #56). That motion is not yet fully briefed, and so will be denied as moot in light of Plaintiff's forthcoming amended complaint. Nevertheless, all of the above analysis applies in equal measure to the arguments therein. Plaintiff should take heed of the arguments in the motion when crafting his new pleading.

**IT IS FURTHER ORDERED** that the motion to dismiss of Defendant Armor Correctional Health Services Inc. (Docket #40) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the motion to dismiss of Defendants Gina Strehlow and Maureen White (Docket #56) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiff shall file a second amended complaint within **fourteen (14)** days in accordance with the terms of this Order.

Dated at Milwaukee, Wisconsin, this 14th day of January, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge